WR-80,635-02
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/17/2015 1:28:23 PM
Accepted 2/17/2015 1:43:01 PM
ABEL ACOSTA
CLERK

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

EX PARTE § 

§ CAUSE NO. WR-80,635-02

DANA MARIE CONTRERAS §

## THE STATE'S MOTION FOR REHEARING

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State files its Motion for Rehearing to the Court's Order of February 4, 2015, pursuant to Rule of Appellate Procedure 79.1, and would show the Court of Criminal Appeals the following:

1.      The State would prefer not to be required to notify all participants in the investigation and trial, giving them an opportunity to testify.  This is because all known relevant information has already been gleaned from the witnesses and through affidavits.  The matter has been thoroughly investigated by this office.

2.      The recantation cases that this Court has remanded for an evidentiary hearing are in a much different posture than the instant case.  The typical recantation case involves a child who testified at trial that she was sexually abused and recants when she is an adult.  The State typically contends that the trial testimony was true and the recantation is false.  Where there is a factual dispute regarding whether the witness lied at trial or in the recantation affidavit, an evidentiary hearing is required to determine credibility.

3.     This case presents the converse of the typical situation.  Sueleta Andrews [Susie] testified at the trial in 1997, when she was 10 years old, that Neal Winegar [Neal] did not sexually abuse her.  She provided an affidavit in 2013, when she was 26 years old, that he sexually abused her many times and that her 1997 trial testimony was false.  Susie's sister, Dana Contreras [Dana], filed a *habeas corpus* application requesting a new trial on punishment because the State used Susie's false testimony.

4.     Confronted with this uncommon allegation, the 47th District Attorney's Office has invested more than three hundred and fifty (350) hours of time over a number of months investigating the Applicant's *Habeas Corpus Writ* claims.  This included, among other things, (1) finding participants in a trial that occurred about seventeen years ago, (2) looking for potential witnesses who were not interviewed by officers over nineteen years ago, (3) finding witnesses who were interviewed nineteen years ago but did not testify, (4) asking witnesses about the events, (5) asking witnesses to sign affidavits, (6) actually getting twenty affidavits signed; and (7) reviewing the evidence, the clerk's record, and the trial record.  The undersigned has talked to and questioned a number of potential witnesses and every witness who signed an affidavit for the State.  A law enforcement officer was present during most of the interviews which resulted in an affidavit and also questioned these witnesses.  Based on its extensive investigation, the State

concluded that the recantation is likely truthful and the trial testimony was likely false.

5. Most of the witnesses were cooperative. Due to health issues and/or the distance from Amarillo, some interviews were conducted on the phone and affidavits sent to the witness.

6. The State has actually visited with four of the deceased's family members, three sisters and a niece, prior to signing the Agreed Findings of Fact and Conclusions of Law. They reside outside of Amarillo, Texas. These family members were aware of the State's reasons for the Agreed Findings of Fact and Conclusions of Law. The deceased's mother, Betty Winegar, passed away in 2007, and his father predeceased the victim. His significant other on the date of death was Kena Andrews, the mother of the Defendant / Applicant, Dana Contreras. Kena Andrews passed away in 2005. The deceased had no children.

7. When the State started its investigation into the Applicant's claims, the office worked to determine whether there were any other facts refuting or supporting the Applicant's claims.

8. The State heard information that Susie was taken to a female counselor after the trial. It took the State many hours of work trying to identify a number of female counselors through employee benefits program(s) and from contacting a number of mental health providers who had worked in Amarillo about sixteen

years ago to search their memories and/or files to determine whether they or an associate had counseled with Susie. The State finally discovered the identity of the social worker, Betsy Franks, who counseled with Susie.

9.      Betsy Franks provided an affidavit in 2014 that Susie told her during an interview on November 12, 1998, that her mother's boyfriend, Neal, played with her vagina when her mother was not at home, made her promise not to tell anyone, and threatened her. Franks' impressions were that Neal sexually abused Susie "a lot"; that Susie told Dana about it; and that Susie lied about it at Dana's trial. Franks was able to refresh her memory from her notes of the interview. (AX 13). The counseling notes are consistent with Franks' affidavit. Franks' affidavit is consistent with what the undersigned discovered from her too. (AX 13). The recanting witness, Susie, in November 1998, told Betsy Franks facts consistent with her 2013 recantation. These 1998 statements occurred about a year after the 1997 trial and were unknown to the State until 2013-2014. (AX 4 & AX 13).

10.     Applicant obtained an affidavit from Rosa Saldana, a neighbor at the time of the offense. (AX 15). The State spent hours interviewing Ms. Saldana, and she eventually gave the State a twelve page affidavit covering years of information. (SX 11). In that affidavit, Ms. Saldana, the mother of Susie's friend, provided an affidavit in 2013 that Susie told her in 1996 that she did not want to go home because the deceased was "touching her." Saldana told Susie to tell her mother.

Susie said that she had, but her mother did not believe her and told her to stop lying. Saldana told Susie to tell Dana. Saldana did not inform law enforcement authorities because she assumed that Susie was talking about physical rather than sexual abuse. Saldana next saw Susie when she was 15 or 16 years old and asked about Dana. Susie said that Dana was in prison for killing Neal. The recanting witness told Ms. Saldana, that the deceased was touching her prior to Neal's demise; years later, after his demise, Susie repeated this to Ms. Saldana. (SX 11 at pgs 3, 6, 9, 10). The information given by Saldana was first known to the State in 2013. (SX 11 pg 10).

11. Robert Walker, Dana's former boyfriend, provided an affidavit in 2013 that Dana told him a few days before the offense that she thought that Neal was "messing with" Susie. (SX 9 pg 5). Walker, who has not seen Dana since Neal's death, resides in Brighton, Colorado. (SX 9 pg 1).

12. Raymond Andrews, Susie's father, provided an affidavit in 2013 that Susie made statements to him during the 1997 trial. These statements called into question whether Susie could have testified untruthfully at Dana's trial, was confused about what was happening or would happen, was confused about her role as a witness, and/or was confused as a child witness. The State was unaware of these matters until 2013 (SX 4, page 3).

13. At trial, Susie testified that she was <u>not</u> sexually abused by the deceased. (4 R.R. 381-84). Her testimony only impacted the punishment verdict; she was not a complainant. She now avers that she was sexually abused by the deceased. She was nine years-old when the offense occurred in January 1996. She testified when she was eleven in November 1997. (4 R.R. 381-84). She told Franks in a private counseling session that she lied at the trial about not being sexually abused. This occurred in 1998 when she was twelve. She now lives in Colorado, and it will be difficult for her to travel to Amarillo for a hearing.

14. It is difficult for sexual assault victims to declare publically that they were sexually abused as a child. Testimony about such matters can be traumatic and humiliating. It also seems that it was difficult for Susie to declare in court documents that she was sexually abused as a child at 26 years of age. This is so because she has a new life and a young toddler. The State does not envision any gain by having her give live testimony about her sworn recantation, be questioned about these matters, and relive her memories. There are other *habeas corpus* affidavits that are congruent with Susie's statement that she was sexually abused. The recantation is consistent with Dr. Anthony Arden's 1997 trial testimony, among other things, that Susie was sexually abused. (4 R.R. 336-37, 340). When Susie denied any sexual abuse at the 1997 trial, the State and the jury found Dr. Arden's testimony implausible.

15.     There is evidence that Susie's recantation is truthful, that she testified falsely at Dana's trial in denying the sexual abuse, and that her false testimony adversely impacted the verdict.  The State agreed to findings of fact and conclusions of law recommending a new trial on punishment after an extensive investigation, discussions with Neal's family, and careful consideration. The State requests that this Court reconsider in the interest of justice its order to remand the case for an evidentiary hearing.  The witnesses with knowledge of the relevant facts will simply testify to the content of their affidavits at a hearing.  If the State did not accept Susie's recantation, it would have requested an evidentiary hearing and opposed relief.  The State requests that the Court approve the Findings of Fact that are supported by the record, approve the Conclusions of Law, grant the *habeas corpus* relief, and remand the cause for a new sentencing hearing.

16.     The State has not factored into the equation that Alesa Simpkins has given statements that contradicted her testimony at Dana's trial about Neal's conduct with Dana.  Alesa also said that, about a year after Dana went to prison, Kena Andrews told Alesa that Susie said that she lied at Dana's trial about Neal not doing anything sexual to her.  Finally, Alesa acknowledged at one point that she lied at the Dana's trial, lacking the fortitude to tell the truth when confronted with Neal's family in the courtroom and how she had been treated by them in the past. Alesa's testimony also tends to corroborate Susie's recantation.  Alesa Simpkins

told law enforcement authorities and Dana's *habeas corpus* counsel in 2013 that, months before Neal's 1996 death, Neal told her about inappropriate sexual conduct with a three year old, female child and that Neal would bathe Susie even though she was nine years old.  (SX 21) (see also SX 18, pgs 1-2).

18.    Dana told her teenage friend, Shannon Garza, that she believed that Neal was sexually molesting Susie.  (SX 8 pg 3).

19.    In this Court's order of February 4, 2015, it directed that the issues be resolved within 90 days and other matters completed in 120 days, absent a proper extension.  Since this Court has placed a rapid deadline on this matter, the State would ask the Court to expedite the State's Motion for Rehearing.

Respectfully submitted,
Randall C. Sims, 47th District Attorney

/s/Mark Baskett
MARK BASKETT, SBN 01870600
Date:  February 17, 2015
47th Assistant District Attorney
Potter County Courts Building
501 S. Fillmore, Suite 5A
Amarillo, Texas 79101
Phone:  806/379-2325; Fax: 806/379-2823

## CERTIFICATE OF CONFERENCE

I sent a copy of this motion and conferenced with Randy Schaffer, counsel for applicant, who agrees with the relief requested by the State.

/s/Mark Baskett
Assistant District Attorney


## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that the forgoing Motion for Rehearing, as reflected in the computer word count, is 2,051 words. That count includes some words in the Motion, which are excluded from the prescribed word limit of 4,500 words. Tex. R. App. P. 9.4 (i)(2)(D).

/s/ Mark Baskett
Assistant District Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct filed copy of the foregoing instrument was served upon the following attorney(s) of record in the above-referenced cause, as shown below on or before the  17th  day of February, 20**15**.
Via:

☐ U.S. Regular Mail, Postage Prepaid          The Schaffer Firm
☐ Hand Delivery                               Randy Lee Schaffer, Jr.
☐ Certified Mail RRR #                        1301 McKinney Ste 3100
☐ Facsimile   (713) 951-9854                  Houston, TX  77010
☒ Emailed to  noguilt@swbell.net              Phone 713-951-9555
☐ Federal Express                             noguilt@swbell.net


/s/Mark Baskett
Assistant District Attorney